UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MCDONALD'S USA, LLC, et al. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 17-cv-00119 (APM) |
| WILLIE T. CRAFT, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Before the court is Plaintiffs McDonald's USA, LLC, and McDonald's Real Estate Company's Motion to Dismiss Defendant William T. Craft's Counterclaims, in which Plaintiffs seek dismissal of Defendant's claims for breach of contract, negligence, and failure to abate nuisance. *See* Answer & Countercl., ECF No. 10 [hereinafter Def.'s Answer & Countercls.]; Pls.' Mot. to Dismiss Countercls., ECF No. 18, Pls.' Mem. in Supp. of Mot. to Dismiss, ECF No. 18-1 [hereinafter Pls.' Mot. to Dismiss]. Plaintiffs assert that Defendant has not plausibly stated any cognizable claim for relief and, even if sufficiently pleaded, each claim is barred by the applicable statute of limitations. *See* Pls.' Mot. to Dismiss at 6. After thorough review of the parties' briefs, the court grants Plaintiffs' Motion and dismisses all of Defendant's counterclaims.

I.     **BACKGROUND**

On November 22, 1974, W. T. Craft, Inc., entered into a Deed of Trust to purchase from Golden Arch Realty Corporation, a piece of property designated as "Lot 105 in Square 5094 in the subdivision made by Golden Arch Realty Corp." Def.'s Answer & Countercls., Attach. 1, ECF No. 10-1 [hereinafter Def.'s Attach. 1], at 1–10 (Ex. A) [hereinafter Def.'s Ex. A]. That property

was subdivided from a parcel of land owned by Golden Arch Realty Corp., Plaintiff McDonald's Real Estate Company's predecessor in interest. Compl., ECF No. 1 [hereinafter Pls.' Compl.], ¶ 12; Def.'s Answer & Countercls. ¶ 1. In 1989, the corporation of W. T. Craft, Inc., ceased to exist and Lot 105, Square 5094 was conveyed to Willie T. Craft, Sr., and Shirley Craft. Def.'s Answer & Countercls., Attach. 2, ECF No. 10-2 [hereinafter Def.'s Ex. F], at 10.[1] Today, Plaintiffs continue to own a restaurant on Lot 104, Square 5094—otherwise known as 4301 Nannie Helen Burroughs Avenue, N.E. ("Plaintiffs' Property").[2] *See* Def.'s Answer & Countercls. ¶ 1; Pls.' Compl. ¶¶ 6, 9.[3] Next door, at Lot 105, Square 5094—otherwise known as 4309 Nannie Helen Burroughs Avenue, N.E. ("Defendant's Property")—Willie T. Craft, Sr., and Shirley Craft own and operate a strip mall, in which three businesses are located. *See* Def.'s Answer & Countercls. ¶¶ 1, 3; Pls.' Compl. ¶¶ 3, 17. Defendant operates the dry cleaners in the strip mall on behalf of his father, Willie T. Craft, Sr. Def.'s Ex. F at 10. Defendant also oversees and is responsible for paying the water and sewer bills for all three businesses on the property. *See id.*; Def.'s Answer & Countercls. ¶ 3.

A single water line, originating on Defendant's Property, services both Defendant's Property and Plaintiffs' Property. *See* Def.'s Attach. 1 at 11–13 (Ex. B), ¶ 3; Def.'s Answer & Countercls. ¶¶ 4, 5; Pls.' Compl. ¶¶ 10–11. Following the subdivision and sale of the original parcel of land, the parties intended to install separate water lines, but they never did so. *See* Def.'s Attach. 1 at 14–15 (Ex. C) [hereinafter Def.'s Ex. C], at 1. At some point in time, Willie T. Craft,

---

[1] This document is an excerpt of the findings of fact and legal conclusions following a hearing before D.C. Water & Sewer Authority regarding Defendant's billing disputes. All pin citations to this document reference the document's original pagination, noted in the bottom center of the page.

[2] The court recognizes that only Plaintiff McDonald's Real Estate Company owns the property on which the involved McDonald's franchise operates, *see* Pls.' Compl. ¶ 6, but will refer to that property as collectively owned by Plaintiffs for ease of reference.

[3] The restaurant is franchised and leased to operator Carlos Mateos. *See* Pls.' Compl. ¶ 7; Def.'s Attach. 1 at 11–13 (Ex. B), ¶¶ 1–2.

Sr., informed Defendant that he had suspicions the water billing was not accurate due to Plaintiffs' restaurant's shared use of the water line. *See* Def.'s Ex. F at 10, 12.

In October 2012, Defendant first reported to D.C. Water & Sewer ("D.C. Water") that he believed he was being erroneously charged for water supplied to and used by Plaintiffs' restaurant. Def.'s Attach. 1 at 23–26 (Ex. E) [hereinafter Def.'s Ex. E], at 2; Def.'s Ex. F at 10–11.[4] D.C. Water investigated the claim, determined the meter vault was in disrepair, and informed Defendant that he was responsible for making the necessary repairs. Def.'s Ex. E at 2. From March 2012 until November 2013, D.C. Water sent Defendant "estimated bills . . . reasonabl[y] based on the number and types of business[es] in [Defendant's] side of the property." Def.'s Ex. E at 2; *accord* Def.'s Ex. F at 11. D.C. Water confirmed for Defendant on April 9, 2013, that Defendant's Property and Plaintiffs' Property shared a single water line. Def.'s Ex. F at 11. After Defendant made the necessary repairs and a new meter vault was installed in November 2013, D.C. Water gave Defendant "a significant financial adjustment of more than $8,900 to compensate him for water [D.C. Water] could estimate was registered at his meter and was subsequently billed to and paid by [Plaintiff] for the period March 27, 2013 to January 29, 2014." Def.'s Ex. E at 2.[5] Beginning in January 2014, D.C. Water provided Defendant, as a courtesy, a special accounting arrangement in which it adjusted Defendant's bill to account for any water billed to Plaintiffs from Defendant's account and separately billed Plaintiffs for their water usage. Def.'s Ex. E at 2–3.

In late January 2015, Defendant sought a refund of $77,237.04 from D.C. Water on the theory that he had been erroneously charged for Plaintiffs' water consumption between January

---

[4] All pin citations to Exhibit E reference the document's original pagination, noted in the lower right-hand corner of the document.
[5] The court acknowledges that there is some internal inconsistency in the record concerning for what period of time D.C. Water gave Defendant the more than $8,900 credit. *Compare* Def.'s Ex. E at 2–3 (indicating the credit was both for the period of March 27, 2013, to January 29, 2014, and the period of March 2013 to November 2014), *with* Def.'s Ex. F (indicating the credit was for a period of March 2013 to November 2014). The court has adopted the more specific version of the facts, but the discrepancy is immaterial to resolution of the pending motion.

1974 and January 2014. *See* Def.'s Ex. F at 1. In a letter to Defendant's counsel, dated February 27, 2015, D.C. Water denied Defendant's claim, reminded Defendant that it remained Plaintiffs' and Defendant's responsibility to install a separate water line, and that D.C. Water would discontinue its courtesy accounting services in May 2015. *See* Def.'s Ex. E at 2–3. Following an administrative hearing on March 1, 2016, D.C. Water concluded that it was not legally responsible for refunding Defendant any overpayments. Def.'s Ex. F at 13–14. The Hearing Officer's written explanation stated that Defendant had two years under D.C. law to bring such a refund claim and because Defendant "knew with certainty that his property and [Plaintiffs'] property were on the same water line and that [Defendant] was paying for [Plaintiffs'] water usage as of April 2013," his refund claims were time barred. Def.'s Ex. F at 12–13. Moreover, the Hearing Officer noted, Defendant and his father had been aware of the problem prior to D.C. Water identifying it; D.C. Water's reaction to the problem had far exceeded its legal obligations; and any recourse Defendant sought needed to be against Plaintiffs, not D.C. Water. *See id.* at 13.

Neither party has undertaken the time and expense to install a separate water line, despite D.C. Water's suggestion to do so. Def.'s Ex. F at 11. D.C. Water extended its courtesy billing practice until June 2015. *Id.* At some point prior to March 2016, the parties reached an agreement that Plaintiffs would pay Defendant for the restaurant's water consumption. *See id.*

The present dispute arose when Defendant threatened to shut off the water to Plaintiffs' property on the theory that Plaintiffs owe Defendant money for water that has been inappropriately billed to him. *See generally* Pls.' Compl. (seeking injunctive relief in the form of a temporary restraining order and preliminary injunction preventing Defendant from shutting off Plaintiffs' water access, as well as a judicial determination of the rights and responsibilities of the parties over the real property and its water supply). The court granted Plaintiffs' Motion for a Temporary

Restraining Order, *see* Order, ECF No. 6, and Motion for a Preliminary Injunction, *see* Order, ECF No. 14. Defendant both moved to dismiss Plaintiffs' Complaint and filed an Answer with three counterclaims. *See* Def.'s Mot. to Dismiss, ECF No. 9; Def.'s Answer & Countercls. The court denied Defendant's Motion to Dismiss on March 1, 2017. *See* Mem. Op. & Order, ECF No. 16.

The court now reviews Defendant's Counterclaims, which Plaintiffs have moved to dismiss. *See* Pls.' Mot. to Dismiss.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In determining the plausibility of a claim, the court must accept the plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true either "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The factual allegations in the complaint need not be "detailed"; however, the Federal Rules of Civil Procedure demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* If the facts as alleged fail to

establish that the plaintiff has stated a claim upon which relief can be granted, then a court must grant the defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

## III. DISCUSSION

Defendant filed three counterclaims: breach of contract, negligence, and failure to abate nuisance. In defense, Plaintiffs state that Defendant has failed to sufficiently plead any counterclaim, but even if adequately pleaded, each claim is time barred. The court addresses each counterclaim in turn.

### A. Breach of Contract Counterclaim

First, Defendant claims that Plaintiffs breached the Deed of Trust entered into on November 22, 1974, by seeking injunctive and declaratory relief in this court in January 2017. *See* Def.'s Answer & Countercls. ¶¶ 10–13; Def.'s Opp'n to Pls.' Mot. to Dismiss, ECF No. 20, at 8. Specifically, Defendant claims that the Upon Full Payment Clause of the Deed obligated Plaintiffs to convey the property free of any easements, and Plaintiffs' act of filing suit in this court to seek declaratory relief acknowledging its implied easement by reservation violated that agreement. Def.'s Answer & Countercls. ¶¶ 12–13.

To state a claim for breach of contract in the District of Columbia, the claimant must plausibly allege: (1) a valid contract existed between the parties; (2) the contract created an obligation or duty; (3) the defendant breached that duty; and (4) the breach caused the claimant to suffer damages. *See Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015).

Plaintiffs move to dismiss Defendant's counterclaim as barred under the three year statute of limitations for breach of contract claims, which Plaintiffs assert began to run, at the latest, in April 2013 when D.C. Water confirmed the properties shared a single water line. Pls.' Mot. to

6

Dismiss at 8. Alternatively, even if there is time left for Defendant to raise a breach of contract claim, Plaintiffs contend, he has failed to do so here: (1) Defendant identifies no "contract" because the "Upon Full Payment Clause" is not part of a binding agreement between the parties, and (2) allowing a claim for an implied reservation of an easement to constitute a breach of contract would negate the legal doctrine of implied reservations of easements, as such easements only come into existence, by definition, when the conveyance does not contain an express easement for the particular and necessary use. *Id.* at 10–11.

The court concludes Defendant has not plausibly alleged a cognizable cause of action.[6] The "Upon Full Payment Clause" of the legal instrument conveying the property reads:

> And, upon the full payment of all of said note and the interest thereon, and all moneys advanced or expended as herein provided, and all other proper costs, charges, commission, half-commissions and expenses, at any time before the sale hereinafter provided for to release and reconvey the said described premises unto the said party of the first part, its successors, or assigns, at its or their cost.

Def.'s Ex. A. This language plainly states the seller's obligation "to release and reconvey" the premises to the buyer. It does not provide for an express easement, but neither does it preclude the seller from seeking an implied easement by reservation. As this court has previously explained, "[u]nder the law of the District of Columbia, an implied easement can arise in one of two ways— by grant or reservation." Mem. Op. & Order, ECF No. 16, at 3. Implied easements by reservation occur when the owner of a parcel has subdivided the land, retained possession of the dominant

---

[6] The court accepts for purposes of this discussion that Defendant's claim is timely based on how he has framed it. He asserts that Plaintiffs' breach occurred when they claimed—presumably for the first time—in this litigation to have had an implied easement by reservation on his land. If that is the premise for the breach-of-contract claim, then it is timely. However, to the extent the claim can be read to assert that Plaintiffs' breach was the failure to build a separate water line, such a claim is plainly time barred. Defendant knew no later than April 9, 2013—if not well before—that he shared a water line with Plaintiffs. Def.'s Ex. F at 12–13 (D.C. Water's confirmation that the parties shared a water line). Therefore, the three year limitations period for breach of contract claims began to run no later than April 9, 2013, when Defendant learned that Plaintiffs had not kept their alleged promise to build a separate water line. Because Defendant did not file his breach of contract counterclaim until February 10, 2017, any such claim premised on the failure to build a separate water line is time barred.

7

estate, and impliedly reserved some use of the servient estate for his own benefit out of strict necessity. *Id.* (citing *Martin v. Bicknell*, 99 A.3d 705, 708 (D.C. 2014)). Filing suit to assert the legal existence of an implied easement by reservation does not violate the terms of the sale of the land. Therefore, even assuming the Deed constitutes a contract, that contract contains no promise by Plaintiffs to refrain from seeking a judicial declaration of an implied easement by reservation. Accordingly, Defendant has not plausibly stated a claim for breach of contract premised on Plaintiffs' decision to seek relief in this court.

### B. Negligence Counterclaim

Next, Defendant claims there is contractual privity between himself and Plaintiffs because Plaintiffs acted as Defendant's personal real estate seller and mortgage lender, and as part of that relationship, Plaintiffs owed Defendant a standard duty of care that Plaintiffs breached by claiming they have an implied reservation of easement on Defendant's Property. Def.'s Answer & Countercls. ¶¶ 22–23.

To state a claim for negligence under District of Columbia law, the claimant must allege three elements: (1) the defendant owed a duty to the claimant; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the claimant's injury. *Poola v. Howard Univ.*, 147 A.3d 267, 289–90 (D.C. 2016). It is the role of the court to determine whether the defendant owed the claimant a duty of care. *See Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1097–98 (D.C. 1994). The applicable standard is "that which a reasonably prudent person would have exercised under the same or similar circumstances." *See Waldman v. Levine*, 544 A.2d 683, 687–88 (D.C. 1988) (explaining that a single standard of care governs all negligence actions). The court first defines the scope of the defendant's duty and then asks whether the injury was reasonably foreseeable to the defendant at the time of the incident. *See Haynesworth*, 645 A.2d at 1098.

8

Once more, Plaintiffs move to dismiss Defendant's counterclaim as both implausibly alleged and time barred. Plaintiffs claim they did not owe a duty "not to take advantage" of Defendant, but even if such a duty exists, it was not breached by Plaintiffs' seeking judicial relief to determine whether they had a right to access the shared water line. Pls.' Mot. to Dismiss at 16. Were the court to find Defendant plausibly stated a claim, Plaintiffs contend in the alternative, such a claim is time barred by the District of Columbia's three-year statute of limitations for negligence claims. *See id.* at 15 (citing D.C. Code § 12-301(8)). Because the water line was installed sometime prior to November 1974, Plaintiffs contend the statute of limitations ran out in or about November 1977. *Id.* And, even if the limitations period began to run in April 2013—when Defendant knew with certainty that the water line was shared between the properties—Plaintiffs submit that Defendant's negligence claim was time barred after April 2016. *Id.*

The court concludes Defendant has not plausibly alleged that Plaintiffs breached any duty of care owed to Defendant as a mortgage lender or seller.[7] Even assuming either Plaintiff was Defendant's lender and owed Defendant such a duty, which is not clear on the present record, Defendant has not plausibly alleged that either Plaintiff misrepresented the rate of his mortgage or any other details in entering into a loan, which appears to be the limited circumstances in which courts have found a breach of duty to occur. *See, e.g.*, *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 120–21 (D.D.C. 2011) (explaining that the District of Columbia may recognize a narrow duty of lenders to "make certain assurances to the borrower during the loan negotiation process"); *Hughes v. Abell*, 794 F. Supp. 2d 1, 10 (D.D.C. 2010) (holding that plaintiff sufficiently pleaded a negligence claim by alleging he paid closing costs to obtain a loan; the lender misstated plaintiff's

---

[7] As before, the court accepts for purposes of this discussion that, as framed, Defendant's negligence claim is timely, because Defendant's contention is that Plaintiffs violated the duty of care only upon filing suit seeking an implied easement by reservation in January 2017.

9

income and interest rate on the loan; the lender assured plaintiff that he need not worry because plaintiff could likely refinance; and the loan caused plaintiff injury by doubling plaintiff's monthly mortgage payments and converting unsecured debt into debt secured against plaintiff's home). Instead, Defendant's allegation, most favorably construed, is that Plaintiffs breached a duty of care owed to him as the seller of the property not to seek an implied easement by reservation. *See* Def.'s Answer & Countercls. ¶ 23. To the extent Plaintiffs owed Defendant any duty as the seller of Defendant's Property, however, the court is convinced Plaintiffs did not breach that duty by seeking a judicial declaration regarding Plaintiffs' right to access the shared water line. A reasonably prudent seller who retains the dominant parcel of a subdivided estate may rely upon the doctrine of implied easements by reservation to access some aspect of the servient parcel out of necessity. *Cf.* Mem. Op. & Order, ECF No. 16, at 3. It is simply unreasonable to believe the law simultaneously provides for the possibility of an implied reservation of an easement and imposes a duty upon a seller *not* to seek the benefit of that doctrine. *Cf. Findlay*, 813 F. Supp. 2d at 120 (explaining that the determination of whether a duty was owed is "essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequence which have in fact occurred" (internal quotation marks omitted)).

Accordingly, Defendant has not plausibly pleaded a negligence claim.

### C. Failure to Abate Nuisance Counterclaim

Third, Defendant alleges that Plaintiffs' failure to properly compensate him for the restaurant's water consumption—arising from Plaintiffs' failure to perform its written promise to install a separate water meter and to make sufficient payments to compensate Defendant—constitutes an ongoing, substantial and unreasonable interference with the use and enjoyment of

his property. Def.'s Answer & Countercls. ¶¶ 16, 17, 20. In other words, Defendant claims he suffers from an ongoing private nuisance.

The courts in the District of Columbia have not yet affirmatively recognized private nuisance as a stand-alone cause of action. *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 166–67 (D.C. 2013). Instead, the District of Columbia Court of Appeals has required plaintiffs to point to tortious conduct from within the usual categories of tort liability before he or she may recover for nuisance damages. *See id.* If the conduct giving rise to the nuisance is unintentional, then the plaintiff must show proof of negligence; if the conduct is intentional, then proof of some other intentional tortious conduct must be shown. *Id.* at 167. Conduct that occurs "during the course of a contract" only qualifies as tortious conduct for purposes of a tort claim "when there are facts separable from the terms of the contract upon which the tort may independently rest and when there is a duty independent of that arising out of the contract itself, so that an action for breach of contract would reach none of the damages suffered by the tort." *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008). For nuisance damages to be awarded, the plaintiff must show that "the offending thing [is] . . . marked by some degree of permanence such that the continuousness or recurrence of the things, facts, or acts which constitute the nuisance, give rise to an unreasonable use." *Ortberg*, 64 A.3d at 168 (internal quotation marks omitted).

Plaintiffs assert that Defendant's nuisance counterclaim is both implausibly alleged and time barred. *See* Pls.' Mot to Dismiss at 12–14. Plaintiffs cite the D.C. Code's three year limitations period to seek recovery for injury to real or personal property and argue that that period began to run, at the latest, in April 2013 when Defendant knew for certain that the properties shared a water line. *Id.* at 12. In the alternative, even if timely, they submit that Defendant's claim is barred because the District of Columbia does not recognize private nuisance as an independent

tort, only as a theory of damages tied to a plausible tort claim, and Defendant has not pleaded a plausible tort claim. *Id.* at 13–14.

The court concludes that Defendant has not stated a claim for which the court could order relief. The conduct to which Defendant points as giving rise to his nuisance damages—Plaintiffs' failure to install a separate water meter and to pay their fair share of the water bill—is intentional conduct, yet it is not an intentional tort. Rather, under District of Columbia law, it is a claim that sounds in contract because it is premised on the very same facts to which Defendant points in support of his breach of contract claim. *See Choharis*, 961 A.2d at 1089.

Lastly, even if the District of Columbia does recognize a stand-alone cause of action for a private nuisance and Defendant adequately pleaded such a claim, Defendant's claim is time barred. In the District of Columbia, a three year limitations period attaches to any cause of action not expressly defined in Section 12-301 of the D.C. Code. *See* D.C. Code § 12-301(8). Defendant's claim cites the source of the nuisance as Plaintiffs' ongoing failure to install separate meters, of which Defendant was aware on April 9, 2013. *See* Def.'s Ex. F at 12–13. Accordingly, the statute of limitations began to run on that day, and the last day he could have filed suit was April 9, 2016—long before he filed his counterclaims in this suit. Accordingly, even if a stand-alone cause of action for private nuisance exists, Defendant cannot recover on one here.

## IV.  CONCLUSION

In light of the foregoing, the court grants Plaintiffs' Motion to Dismiss Defendant's Counterclaims. A separate Order accompanies this Memorandum Opinion.

Dated: June 22, 2017

Amit P. Mehta
United States District Judge